UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NORTH SHORE PHARMACY SERVICES, INC., et al., Plaintiffs, v. BRESLIN ASSOCIATES CONSULTING, LLC, Defendant. | ) | CIVIL ACTION NO. 02-11760-NG |
| BRESLIN ASSOCIATES CONSULTING, LLC, et al., Counterclaim Plaintiffs, v. OMNICARE, INC., et al., Counterclaim Defendants. | ) | |

**ORDER ON BRESLIN'S MOTION TO COMPEL**
**OR ALTERNATIVELY FOR AN ORDER IN LIMINE**

September 7, 2005

This matter is before the court on the motion of the Breslin Parties to compel or alternatively for an order in limine (Docket No. 77). This motion raises the issue whether the plaintiffs and counterclaim defendants, North Shore Pharmacy Services Inc., Value Pharmacy, Inc., and Omnicare, Inc. (collectively, the "Omnicare Parties") have asserted, or intend to assert, an "advice of counsel" defense to the Breslins' abuse of process claim

and therefore have waived the attorney-client privilege.[1] Oral argument was heard on August 26, 2005. After reviewing the parties' submissions and considering their arguments the motion is ALLOWED IN PART and DENIED IN PART as detailed herein.

## STATEMENT OF FACTS

The Breslin Parties contend that the Omnicare Parties brought a baseless lawsuit for the purpose of silencing Breslin and in order to prevent legitimate inquiry into Omnicare's billing practices, a claim which is strenuously denied by the Omnicare Parties. The Breslin Parties filed an Interrogatory requesting, inter alia, the identity "of each person involved in the determination to bring said action" against the Breslin Parties, as well as "the date, participants, and subject matter of all meetings and/or communications concerning the decision to initiate this action and the implementation of that decision." See Interrogatory No. 1. The Omnicare Parties' entire response was as follows:

> Omnicare objects to Interrogatory and Document Request No. 1 on the ground that it seeks information protected by the attorney client privilege and/or work product doctrine. Subject to and without waiving this objection, Jeff Stamps decided to file the action against

[1] The Breslin Parties have also asserted that the Omnicare Parties have waived the attorney-client privilege on the basis of the crime fraud exception. However, "[t]o best promote the purposes of the attorney-client privilege, the crime-fraud exception should apply only if the communication seeks assistance in or furtherance of future criminal conduct." Purcell v. Dist. Atty. for Suffolk Dist., 424 Mass. 109, 114, 676 N.E.2d 436, 440 (1997) (emphasis added). The tortious conduct at issue here does not implicate the crime fraud exception.

> Breslin Associates Consulting LLC. Mr. Stamps consulted with Pat Keefe, an Omnicare Vice President, before making the decision.

Thus, no lawyer was identified in the interrogatory answer.

Thereafter, the Breslin Parties deposed Mr. Stamps. He testified in relevant part as follows:

> Q: Who was involved in making the determination to file a lawsuit?
>
> A: Pat Keefe, myself and Earle Maiman.
>
> Q: And were there meetings held before the lawsuit was filed between the three of you?
>
> A: No.
>
> Q: Were there communications by e-mail or by letter among the three of you to make that determination?
>
> A. There were telephone conversations. I don't recall sending any e-mails about it to anyone.

(Stamps Depo. at 122). Earle Maiman, a partner with the law firm of Thompson Hine, was then counsel to the Omnicare Parties. Mr. Stamps testified about the "portions of those conversations which did not involve a legal advice from your attorney." A privilege was claimed as to the rest. (Id. at 126-27). Later, Mr. Stamps testified in response to the question "who made the determination" to bring the lawsuit, "Pat Keefe and myself consulted on the matter and then we consulted Earle Maiman." (Id. at 128, emphasis added).

The Breslin Parties also deposed Patrick Keefe. Mr. Keefe testified that Mr. Stamps called him to complain about Breslin Associates' audit and the "misleading

information" he was giving customers, and to ask Mr. Keefe's advice. (Keefe Depo. at 37). Keefe's advice was to contact the company's law firm. (Id. at 39-40). Mr. Keefe then testified that he spoke with the company's lawyers both by telephone and in person, but claimed the attorney-client privilege when questioned about the substance of the conversations. (E.g., id. at 39-44, 50-53). The following colloquy then took place:

> Q: But my question is do you recall a time before the Complaint was filed with the court and served on Breslin Associates that you told Jeff Stamps to go ahead and sue Breslin Associates?
>
> A: The answer to that question is no, but I need to clarify because I wouldn't have told Jeff Stamps. We would have told [the law firm of] Thompson Hine to proceed forward with the lawsuit.
>
> Q: So you didn't tell Jeff Stamps. Did you tell Thompson Hine to proceed with the lawsuit, you personally?
>
> A. Upon the advice of counsel we proceeded forward with the lawsuit.
>
> Q: That wasn't my question. My question was was there a point in time where you said that the lawsuit should proceed, and you told somebody that?
>
> A: I'm not quite sure how to answer the question because I would have, after discussing with Thompson Hine the case, on their recommendation I would have said yes proceed forward.
>
> Q: Is that your best recollection of what you did say?
>
> A: To the best of my recollection, yes.
>
> Q: You said based on their recommendation you said proceed forward. Can you tell me what their recommendation was?

> [Defense counsel] Objection, instruction to the witness not to answer on attorney-client privilege and work product grounds.
>
> A: I need to go back and clarify my answer. I'm not sure I'm making myself clear. Thompson Hine would have given us advice on whether we should proceed forward or not. Based upon that advice I would have been involved in the decision of saying "Based upon your recommendation we would accept what you have recommended that we do to handle this issue."

(Id. at 56-57, emphasis added).

The Breslin Parties contend that this deposition testimony constitutes an "advice of counsel" defense, and, therefore, a waiver of the attorney-client privilege. The Omnicare Parties contend that they have not waived any privilege, and deny any intention to assert an advice of counsel defense. The Omnicare Parties do anticipate, however, that in describing the events leading to the filing of the lawsuit, which are admittedly relevant to the abuse of process claim, the Omnicare Parties would testify that the decision was made to file suit "after consultation with counsel."

## ANALYSIS

The first question which must be addressed is whether the Omnicare Parties have waived the attorney-client privilege by asserting an "advice of counsel" defense. "When a party asserts an advice of counsel defense, it waives the attorney-client privilege" at least to some degree, because "it would be fundamentally unfair to allow a party to disclose opinions which support its position, and simultaneously conceal those which are adverse." Saint-Gobain/Norton Indus. Ceramics Corp. v. General Electric Corp., 884 F.

Supp. 31, 33 (D. Mass. 1995) and cases cited. Thus, "[t]he privilege which protects attorney-client communications may not be used both as a sword and shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege must be implicitly waived." Chevron Corp. v. Pennzoil Corp., 974 F.2d 1156, 1162 (9th Cir. 1992).

In the instant case, the Omnicare Parties contend that they have not asserted an advice of counsel defense, and that they cannot be found to have waived the attorney-client privilege. This court agrees as of this date. Thus, in answering interrogatories, the Omnicare Parties did not mention counsel, or any involvement of counsel, in the decision to bring the litigation. Similarly, in none of their pleadings did the Omnicare Parties claim reliance on advice of counsel as a defense to the abuse of process claim. Rather, the Omnicare Parties have consistently asserted the attorney-client privilege in response to requests for information about the substance of conversations with counsel. While it is clear "as a general principle, that a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case" it is also true that even an implicit waiver should be "a result of some affirmative act" by the party asserting the privilege. Darius v. City of Boston, 433 Mass. 274, 277, 278, 741 N.E.2d 52, 55 (2001). Where a party has been "careful to avoid any reference to legal advice" during its case in chief, responding to factual questions posed by the opposing party should not lead to the conclusion that an advice of counsel defense has been implicitly asserted. See Eldridge v. Unumprovident Corp., No. 971294, 2003 WL 22699676 (Mass.

Super. Sept. 16, 2003). Thus, if the Omnicare Parties were willing to be bound to their position that they do not intend to assert an advice of counsel defense at trial, no further analysis would be necessary as there was no past waiver of the privilege.

In the instant case, however, the Omnicare Parties have been clear that, contrary to their answers to interrogatories, they intend to offer at trial direct testimony that suit was brought only after consultation with counsel. Such testimony would be relevant in this case only to the extent that it implies that the Omnicare Parties weighed their alternatives and/or had legal advice as to the merits of their claims before filing suit, and the testimony would be offered to refute the abuse of process claim. Under the circumstances of this case, this court finds that such testimony constitutes an implicit assertion of the advice of counsel defense.

This court finds persuasive the court's analysis in In re Broadcom Corp. Sec. Litig., Nos. SA CV 01275GKTMLGX, SACV02301GLTANX, 2005 WL 1403516 (C.D. Cal. Feb. 10, 2005). There the court found that proposed testimony that each SEC filing and disclosure document was reviewed by company lawyers, that the defendants were not lawyers, and that they expected the lawyers to do their jobs competently, resulted in the implicit assertion of an advice of counsel defense. As the court ruled, "[a] reliance on counsel privilege waiver does not require a party's direct statement that counsel was relied upon. It may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit." Id. at *1. In that case the court held in language relevant to the present situation:

> The proposed testimony unequivocally puts in issue reliance upon counsel as a defense --reliance on the fact counsel came to the conclusion everything was legal and didn't warn defendants of a problem. Rather than simply deny scienter, defendants assert good faith based on an expectation the lawyers would tell them if anything illegal was happening. Defendants have injected an issue that requires examination of the attorneys' communications with defendants to see if defendants are corroborated. In effect, defendants are saying they relied on their excellent attorney to do a good job examining all the documents to tell them if anything was wrong, and their lawyers never said anything was wrong, with the unmistakable inference defendants felt assured the lawyers thought everything was legal. Plaintiffs are now entitled to review the attorneys' communications on the subject topics to see if defendants are telling the truth.

Id. at *2.

Similarly, in the instant case, the Omnicare Parties are interjecting into the case the "unmistakable inference" that they expected their lawyers to tell them if there was anything improper in bringing suit, and that they relied on that advice in bringing suit. The fact that "consultation with counsel" is not a necessary component of a discussion as to how the litigation came to be filed is evidenced by Omnicare's answers to interrogatories, which make no mention of any lawyer involvement. If the Omnicare Parties intend to have a jury infer that the Omnicare personnel sought legal advice to negate the inference that they filed suit frivolously, the Breslin parties are entitled to delve into whether the Omnicare Parties actually followed their lawyer's advice.

The Omnicare parties have cited Refuse & Envtl. Sys., Inc. v. Indus. Serv. of Am., 120 F.R.D. 8 (D. Mass. 1988). In that case, an attorney had obtained a protective order barring his deposition on the basis of attorney-client and work product privilege.

Plaintiffs were seeking relief from the protective order so that the deposition could go forward. Among the issues in the litigation was whether suit had been filed with knowledge that it had no basis in fact, and with the intent to eliminate or interfere with competition. Thus, the plaintiffs were seeking depositions directed at exploring the decision-making process leading to the filing of the lawsuit. Id. at 9. As of the time of the motion seeking relief from the protective order, each defendant had denied being involved in the decision to file the lawsuit, leading the court to conclude that "[h]ow the defendants' lawsuit ever got filed in state court is shrouded in mystery." Id.

The court allowed the deposition to go forward on several grounds. First, the court held that the attorney was not the appropriate party to assert the attorney-client privilege. Id. at 10. More importantly, however, the court found that the claim of privilege was much too broad, because "many details may be proved without in any way implicating the privilege. The fact that an attorney was consulted, for example, is not protected. The date, length of time and place of the consultation is not protected. Questions may be asked as to who was present at the meeting, since the presence of strangers may vitiate the privilege." Id. For these reasons the court allowed relief "from the blanket protective order to permit them to depose [the attorney] with regard to all matters outside the proper scope of the attorney/client privilege." Id. at 11.

Given the posture of the case, however, the court was not prepared to rule that the attorney-client privilege had been waived. Thus, the court did not allow the plaintiffs to explore the substance of privileged communications during the deposition since counsel

for the defendants "has explicitly stated that he does not intend to rely formally on any 'advice of counsel defense'" and stated that he had no intention of calling the attorney as a witness. Id. at 11. The court then went on to state, in language on which the Omnicare Parties rely, that "[t]he mere fact that, during the course of the trial, the fact that the complaint was signed by an attorney and filed after consultation with an attorney, will emerge does not constitute in any sense a 'waiver' of the attorney/client privilege. At most, it underlines the relevance of [the attorney's testimony] were it obtainable." Id. Nevertheless, the court held, that if the defendants intended to present the substance of the communications, or to call the attorney as a witness, it would constitute a waiver of the privilege. Id. at 11-12.

The procedural posture of the instant case differs significantly from that of the Refuse case, and the Omnicare Parties are reading too much into the language of that case. The court in Refuse was not asked to rule on the admissibility of testimony at trial, after development of a record. Nor was the Refuse court being asked to consider the fairness of inferences to be drawn from proposed testimony. Moreover, in Refuse, no one had placed the attorney squarely within the decision-making process and, at the time of the court's decision, no one knew what the deposition testimony would reveal. There is nothing in the Refuse decision which would have prevented the plaintiffs from

renewing their request to delve into the substance of the communications once they learned about the participants in the decision-making process.[2]

In the instant case, the deposition testimony, unlike Omnicare's answers to interrogatories, placed counsel in the midst of the decision making process. The deposition testimony of Messrs. Stamps and Keefe make it clear that they relied on counsel's advice before bringing suit. The defendants do not want to introduce evidence limited to the fact that an attorney filed the complaint – which would be irrelevant to the case. Rather, the defendants want to introduce evidence that they met with and consulted with counsel for the purpose of refuting any bad faith implications of filing suit. If such testimony is offered at trial, the Breslin Parties should be able to explore whether the advice given was consistent with bringing suit.

**ORDER**

The waiver stemming from the use of an advice of counsel defense is premised on the fact that in certain circumstances "fairness requires examination of protected communications." Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (defendant may only refer to obtaining advice of counsel if plaintiff argues that the defendant did not seek advice of counsel, and then the defendant may rebut the argument "generally without referring to any reliance on the advice or related good faith."). In the

---

[2] This court does note that a jury found some of the defendants liable for bringing a baseless lawsuit in an attempt to drive the plaintiff out of business, and that a District Judge found that such conduct violated Mass. Gen. Laws ch. 93A. Refuse & Envtl. Sys. v. Indus. Serv. of Am., 932 F.3d 37, 41-43 (1st Cir. 1991).

instant case, fairness requires that neither the plaintiffs nor the defendants lead the jury to infer that advice of counsel either was or was not obtained. Therefore, plaintiffs' questioning shall be limited to which company personnel were involved in the decision to bring the litigation, in which case the Omnicare Parties shall be limited to the response provided in their interrogatory answer. The Omnicare Parties shall not testify that counsel was involved in the decision making process, or that counsel was "consulted" before suit was filed.

If the Omnicare Parties want to offer the testimony of Messrs. Keefe and Stamps relating to counsel's involvement in the decision-making process, they shall notify the Breslin parties within fourteen (14) days of the date of this Order. At that point, the attorney-client privilege as to the meetings and other communications with counsel leading up to the filing of suit, only, shall be deemed waived. The Breslin parties may then seek discovery as to those communications.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge